## Jarrell v. Commonwealth.

(Decided November 6, 1931.)

846

)EDWARD L. ALLEN, A. J. MAY and W. W. WILLIAMS' for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

Opinion of the Court by Judge Thomas—Reversing.

The appellant and defendant below, Pete Jarrell, in the mining town of Maytown in Floyd county, and at about 8 p. m., shot and killed Boga Patton. He was later indicted by the grand jury of Floyd county in which he was accused of murder, and at his trial in the Floyd circuit court he was convicted of voluntary manslaughter and punished by confinement in the penitentiary for nine years. His motion for a new trial was overruled and from the verdict and judgment rendered thereon he prosecutes this appeal, and by his counsel urges three grounds for reversing the judgment, which are, (1) That the verdict is flagrantly against the evidence, and is unsustained by it; (2) error of the court in admitting

incompetent evidence offered by the commonwealth over defendant's objection; and (3) erroneous self-defense instructions given by the court. They will be considered and determined in the order named.

■ In disposing of ground 1 we conclude that it is unnecessary to recite the evidence in detail, since it is quite voluminous and to do so would greatly lengthen the opinion without corresponding benefit to the parties or the profession. Suffice it to say that bad feeling had existed between defendant and deceased for some six or eight months prior to the homicide, and which grew out of a difficulty between them that occurred at the home of deceased because of supposed or actual undue relations between appellant and the wife of deceased. Witnesses who testified in the case told about threats that each of them had made against the other between the time of the difficulty referred to and the day of the killing. It was proven that on the fatal night deceased exhibited anger towards defendant and a disposition to engage him in a personal difficulty, but, according to the defendant himself, deceased possessed no weapon and expressed no more than a desire for a fist fight. At the immediate time and place of the killing deceased was in his shirt sleeves, and the proven facts and circumstances at that time do not uncontradictedly establish a case of self-defense, but which is otherwise argued by counsel for defendant in their endeavor to sustain this ground. On the contrary, we interpret the testimony to portray, not only preparation for the anticipated encounter on the part of defendant, but to also establish an indifference on his part as to the character of outcome that actually happened. No disinterested person can read this record without becoming so convinced, and for which reason we conclude that the court did not err in overruling defendant's motion for a directed acquittal, nor did it err in overruling the motion for a new trial upon the urged ground that the verdict was flagrantly against the evidence.

■ The testimony relied on to sustain ground 2 was that given by the witnesses Harrison Borders and Vivian Hamilton, both of whom testified in rebuttal. Borders testified, over the objections and exceptions of defendant, to conversations and statements of deceased as to what happened at the time of the first difficulty between defendant and deceased, all of which were made

between then and the day of the homicide, and which were contradictory of the testimony given by defendant concerning that difficulty. Clearly, proof of such statements of the deceased out of the presence of the defendant was a flagrant violation of the rule against the admission of hearsay testimony, and counsel for the commonwealth do not attempt to justify the action of the court in so ruling. That it was both erroneous and prejudicial is so manifest as to require no argument or discussion,

The witness Vivian Hamilton was a stenographer who took down the testimony heard before the grand jury, including that of one Si Reynolds, who was an eyewitness to the homicide. He was absent at the trial, and an affidavit of defendant was filed in support of his motion for a continuance, in which he set out what he claimed would be the testimony of Reynolds, and which the court permitted to be read to the jury as the testimony of the absent witness. But, in rebuttal, that affidavit was permitted to be contradicted by the grand jury stenographer, who read to the jury the transcript of the testimony of Si Reynolds, and which she stated was his testimony before that tribunal. The court did not confine her testimony to a mere contradiction of what the affidavit stated his testimony would be, but permitted her to go further and read the testimony of the absent witness on other phases of the case, and which were favorable to the commonwealth, and, of course, derogatory to the cause of defendant. The error in admitting the testimony of that witness was, if possible, more glaring and more prejudicial than that of the testimony of Borders which we have above condemned. The rule is, that the testimony of an absent witness as incorporated in an affidavit for a continuance because of the absence of the witness, when read to the jury as the deposition of that witness, may not be contradicted by showing that the witness had made different statements contradicting his testimony as set out in the affidavit. The reason why the absent witness may not be so contradicted is that no foundation was or could be laid for the introduction of such impeaching testimony, and which rule has been approved and applied by this court in numerous cases, some of the latest of which are Brown v. Commonwealth, 200 Ky. 313, 254 S. W. 891; Blanton v. Commonwealth, 210 Ky. 542, 276 S. W. 507, and others referred to in those opinions. None of the testimony

given by the witnesses Borders and Hamilton was competent for any purpose whatever, and the court erred in admitting any of it.

■ It is argued in support of ground 3 that the same court who tried the cases of Slone v. Commonwealth, 230 Ky. 199, 18 S. W. (2d) 1005; Caudill v. Commonwealth, 234 Ky. 142, 27 S. W. (2d) 705, and Slone v. Commonwealth, 236 Ky. 299, 33 S. W. (2d) 8, committed the same error in his given self-defense instruction in this case as we held was done in those cases, i. e., that he so framed the self-defense instruction that was given to the jury as to impress upon the minds of its members that it was the duty of defendant, before he could successfully rely upon his right of self-defense, to flee from the scene, if that was necessary, to "avoid" the threatened, actual, or apparent danger to himself about to be inflicted by deceased. In other words, that the court in employing the word "escape" in the self-defense instruction made it possible for the jury to conclude that defendant had no right to stand his ground, regardless of the attitude or conduct of deceased, and that, if he could get away from that danger by flight, it was his duty to do so. We pointed out in the cases referred to, and others cited in those opinions, that the practice in criminal prosecutions tolerated no such rule, but, notwithstanding our frequent and repeated condemnation of such an instruction, the same court continues to pursue the same course. Possibly the instruction in this case is so worded as that a reversal would not be ordered if the complaint now under consideration was the only one urged for a reversal. But, whether so or not, trial courts, as we pointed out in the cases above cited, should employ in the self-defense instruction the words "avert the danger real or to the defendant apparent," or "avoid" such danger, or words of similar import, and which do not convey the idea that it was the duty of defendant to resort to flight before defending himself if it could be done without endangering himself. In other words, the word "escape" conveys the idea of "getting away from," whilst the words "avert," "avoid," and others of like import convey the idea of "overcoming," which is the true one measuring the right of self-defense. It is to be hoped that the court who tried this case will hereafter conform his self-defense instruction to the suggestions herein made and which were also made in the cases re-

ferred to, and all of which were tried by the same judge who tried this one.

For the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial and to set it aside, and for proceedings consistent with this opinion.