## Murphy v. Commonwealth.

(Decided January 15, 1932.)

R. L. VINCENT, SAM SPARKS and B. M. VINCENT for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

John Murphy was indicted in the Grant circuit court for manslaughter. On the first trial of the case, the jury did not agree. On the second trial, he was found guilty and his punishment fixed at two years' imprisonment. He appeals.

The first ground relied on for reversal is that the court erred in refusing the defendant a change of venue, but the order of the court shows that the evidence on this subject was heard in open court; the evidence so heard is not in the transcript, and it must be presumed that the evidence supports the judgment of the court.

The proof by the commonwealth was, in brief, this: Kinman was the circuit court clerk of Grant county. Dr. Mencke, a friend of his, was drinking on Christmas day, 1928. Kinman took him in a car out the road leading from Williamstown to Dry Ridge, and, when they reached a point just outside of the town limits, he stopped the car and got out and was standing at the side of the car talking to Mencke, who was inside of the car. The car was entirely off the concrete part of the road. After standing there a few minutes talking to Mencke, Kinman started back toward the rear of the car, and, just as he did this, Murphy came along in his car and suddenly turned to the left, just as he reached Kinman, and struck him. By the collision Kinman was thrown ten feet in the air and a distance of about forty feet. His right leg and right arm were broken in two places; his neck was broken, and he died instantly.

On the other hand the proof for the defendant is that John Murphy lived at Maud, Ohio, eighteen miles north of Cincinnati. Albert Christie, a friend of his asked Murphy to take him down to see his mother at Ford, Ky., on that day, and Earl Sax went with them. They left Cincinnati in the morning and were running about thirty or thirty-five miles an hour as they approached Williamstown. Just as they reached the place where Kinman was struck, Murphy overtook a car and turned to the left in passing it. Just as he did this Kinman came from behind his car, six or eight feet in front of Murphy's car, and so close to it that Murphy could not avoid hitting him.

When the case came on for trial, the defendant filed his affidavit for a continuance on account of the absence of his witnesses. The commonwealth attorney agreed that the affidavit might be read as the testimony of the witnesses. One of the absent witnesses was Emery Hanson. His testimony was read to the jury by the defendant. This part of the affidavit was in these words:

"That he was driving a motor vehicle upon the Dixie Highway near Williamstown, Kentucky, on December 25, 1928, and that the defendant was in the act of passing his car driving in a Buick touring car at a moderate rate of speed and that Roy Kinman stepped from behind a parked automobile in front of the Buick touring car and was struck by the said Buick touring car; that the striking of Kin-

man was purely accidental and unavoidable; that the testimony of said witness would be true."

In rebuttal, the commonwealth was allowed, over defendant's objections, to introduce witnesses and prove that Murphy, on certain occasions, had said that he was not present at the accident, and did not know anything about it.

The commonwealth attorney in his concluding argument to the jury stressed the fact that the commonwealth had to admit the affidavit in order to get a trial, and elaborated upon this evidence introduced in rebuttal by the commonwealth. All of this was improper. In Jarrell v. Commonwealth, 240 Ky. 845, 43 S. W. (2d) 177, 178, the court, having before it this precise question, said:

"The rule is, that the testimony of an absent witness as incorporated in an affidavit for a continuance because of the absence of the witness, when read to the jury as the deposition of that witness, may not be contradicted by showing that the witness had made different statements contradicting his testimony as set out in the affidavit. The reason why the absent witness may not be so contradicted is that no foundation was or could be laid for the introduction of such impeaching testimony, and which rule has been approved and applied by this court in numerous cases, some of the latest of which are Brown v. Commonwealth, 200 Ky. 313, 254 S. W. 891; Blanton v. Commonwealth, 210 Ky. 542, 276 S. W. 507, and others referred to in those opinions."

The error here was peculiarly prejudicial to the defendant, because neither of his companions, who had returned to Ohio, were introduced on the trial, and he had no evidence left as to how the accident occurred, except his own testimony. To allow the commonwealth to prove that the witness, out of court, had said he knew nothing about the accident was not only to destroy the force of his testimony, but also to put the defendant in a false position before the jury. The error here went to the very essence of the case, and a new trial must be granted.

The instructions of the court to the jury are apparently taken from the opinion of this court in Jones v. Commonwealth, 213 Ky. 361, 281 S. W. 164. But on another trial, the court will omit from instruction No. 1

848

the words "wilfully, feloniously and," so that this part of the instruction will read, "the defendant recklessly or wantonly ran said machine against Roy Kinman," etc. Thus corrected, the instruction will literally follow the opinion referred to, and the additional words may mislead the jury.

There was sufficient evidence to take the case to the jury on the proof for the commonwealth.

Judgment reversed, and cause remanded for a new trial.