Mitchell C. BARNES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 88–SC–831–MR.

Supreme Court of Kentucky.

June 28, 1990.

As Modified on Denial of Rehearing Sept. 6, 1990.

Marie Allison, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Rickie L. Pearson, Asst. Atty. Gen., Frankfort, for appellee.

LAMBERT, Justice.

Claiming a number of trial errors, including the admission into evidence of an affidavit for a restraining order signed by the victim two and a half years prior to her death, appellant appeals to this Court from his murder conviction by which he was sentenced to an indeterminate term of confinement not to exceed fifty years.

The tragic facts of this case are not unfamiliar. Appellant and his wife married young. During their time together, appellant drank alcohol to excess, frequently assaulted his wife, and finally caused or contributed to her death.

According to appellant, after an evening of dancing and excessive drinking, he and his wife returned to their home. Appellant was depressed and while his wife was in the bathroom, he obtained a shotgun from another room with the thought of suicide. When his wife entered the room and discovered him sitting on the bed holding the gun, she exclaimed and grabbed the barrel of the gun with both hands and when she did, the gun discharged into her abdomen causing her death. Appellant left the house and shortly thereafter encountered a police officer to whom he said "help me, help me. I shot my wife." A trip to the home revealed that appellant's wife was dead and appellant was arrested.

After waiving his right to remain silent appellant gave the police a statement which disclosed that he had been drinking, that he and his wife had argued, that he had obtained the shotgun to shoot himself, that a struggle had occurred, and that as the victim pulled the barrel of the previously cocked shotgun, it accidentally discharged. Appellant said he shoved the gun under a couch and left the house en route to his brother's home to obtain help.

The post mortem examination confirmed that the victim died of a gunshot wound to the abdomen and the ballistics experts placed the distance between the muzzle of the shotgun and the victim's body at between one and five feet.

About two and a half years prior to her death, the victim brought a divorce action against appellant. In the divorce proceeding she moved for a restraining order and executed an affidavit in support of

her motion. Paragraphs three and four of the affidavit were as follows:

"3. In spite of numerous requests by Petitioner that Respondent [appellant herein] refrain from such acts, the respondent has on numerous occasions physically thrown her out of home, has hit her and threatens to shoot Petitioner with his rifle or handgun.

4. The Petitioner believes that unless a Restraining Order is issued she will suffer immediate and irreparable harm."

Over appellant's motion *in limine* prior to trial and his objection on hearsay grounds when the evidence was offered, the Commonwealth was permitted to read the foregoing affidavit to the jury. On appeal, appellant claims denial of his federal and state constitutional right of confrontation. The Commonwealth contends that the affidavit was properly admitted under the present state of mind exception to the hearsay rule.

Any discussion of the hearsay rule must start with the proposition that hearsay evidence is not admissible unless it fits within a recognized exception to the rule against admissibility. Hearsay is defined as "an extrajudicial utterance (oral or written) offered to prove the truth of the matter asserted." R. Lawson, *The Kentucky Evidence Law Handbook*, § 8.00 (2nd. ed. 1984). In a widely quoted statement explaining the principles underlying exclusion of hearsay evidence, this Court said:

"The theory of the hearsay rule is that when a human utterance is offered as evidence of the truth asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand and subject to the test of cross-examination. Wigmore on Evidence, section 1361.

This hearsay rule forbids the use of an assertion, made out of court, as testimony to the truth of the fact asserted...."
*Davis v. Bennett's Adm'r*, 279 Ky. 799, 132 S.W.2d 334, 338 (1939).

These principles were elaborated in *Kinder v. Commonwealth*, Ky., 306 S.W.2d 265, 266 (1957), as follows:

"Hearsay has been defined as evidence which derives its value not solely from the credit to be given to the witness upon the stand, but in part, from the veracity and competency of some other person. The hearsay rule signifies a rule rejecting assertions offered testimonially which have not been in some way subjected to the test of cross-examination under oath. It is an extrajudicial testimonial assertion which may be either written or spoken. The theory of the rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the fundamental test of cross-examination."

The essence of the rule prohibiting the admission of hearsay evidence is the absence of an opportunity for cross-examination. While a number of exceptions have been developed to permit the admission of hearsay evidence when it has been shown to be necessary and trustworthy, the general rule has not been lost in the exceptions. To deprive a litigant of a right so fundamental as the right to confront and cross-examine witnesses, the statements must possess characteristics or have been made under circumstances which substantially eliminate the possibility of error. Reliability must be established. See generally Lawson, *The Kentucky Evidence Law Handbook*, Chapter 8 (2nd ed. 1984).

In the instant case, appellant was on trial for intentionally causing the death of his wife. It was his right to challenge the evidence presented and cross-examine witnesses against him. This right was denied when the jury was permitted to hear the unchallenged statement made by his wife in a divorce proceeding two and a half years earlier in which she said that appellant "threatens to shoot Petitioner with his rifle or handgun." This evidence was offered to prove the truth of the matter asserted, i.e. that appellant had made such a threat, and permitted the jury to infer that the threat had been carried out. At no time was this statement subjected to cross-

examination to reveal its possible exaggeration, abridgement of facts, or outright falsehood. Thus, in appellant's trial for murder the jury which determined his guilt was allowed to hear evidence which tended to establish his intent, the most basic element of the crime charged, without any opportunity to test such evidence by cross-examination.

We have examined the authorities cited by the Commonwealth, and particularly our decisions in *Fleenor v. Commonwealth,* 255 Ky. 526, 75 S.W.2d 1 (1934), and *Scruggs v. Commonwealth,* Ky., 566 S.W.2d 405, *cert. denied,* 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978). *Fleenor* is easily distinguished from the instant case because the threat was disclosed by a witness who testified at trial and was subject to cross-examination. Our holding that proof of the state of antagonism between the defendant and the deceased was competent does not dispense with the requirement that the source of the testimony be subject to cross-examination. Our decision in *Scruggs* is likewise distinguishable in that the appellant sought to introduce the exculpatory oral statements of and a note written by the victim. Affirming the trial court's decision to exclude this evidence, we said:

> "[T]he person making the statements and writing the note is dead and certainly not available. The evidence does not establish the oral or written statements of the decedent to possess a high degree of trustworthiness nor are the statements shown to be relevant to the guilt or innocence of the appellant of the murder of his wife. Neither the statements made by the victim on the weekend prior to her disappearance nor the contents of the note comes within the exception to the hearsay rule. Both were properly excluded." *Id.* at 410.

Appellee also relies on this Court's decision in *Matthews v. Commonwealth,* Ky., 709 S.W.2d 414 (1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 170 (1986), in which we found no error in the admission of evidence that the victim had taken a warrant against appellant shortly before the crime was committed. This evidence was found to be relevant to the motive or state of mind of appellant and to be a part of the immediate circumstances bearing on the crimes charged. The instant case is inapposite. The Commonwealth does not contend that appellant murdered his wife in retaliation for her attempt to obtain a restraining order two and a half years earlier nor does it contend that the affidavit was a part of the immediate circumstances bearing on the crimes charged. The fact of the warrant obtained in *Matthews* was found to be relevant as to motive or state of mind. No such finding can be made with regard to the affidavit admitted in the evidence of this case.

Moreover, it is of little significance that the hearsay evidence was in the form of an affidavit. We are unaware of any rule of law whereby inadmissible hearsay is rendered admissible by virtue of the fact that it is sworn. At most a statement made under oath might be regarded as possessing a greater degree of trustworthiness, but such is not sufficient to overcome the general rule elaborated herein.[1]

On this issue we conclude as we began. In *Jett v. Commonwealth,* Ky., 436 S.W.2d 788 (1969), this Court greatly expanded the use of hearsay evidence. Central to our holding, however, was preservation of the right of cross-examination. We reasoned that when the person who is said to have made the out-of-court statement and the person who says he made it both appear as witnesses under oath and subject to cross-examination, there is no reason to deny the jury an opportunity to hear all they both have to say on the subject. In the absence of such circumstances or other strong indicia of reliability, hearsay evidence has been excluded. *Cf. Askew v. Commonwealth,*

---

1. The briefs of the parties do not indicate that any hearing was held on the decedent's motion for a restraining order or whether any decision was made after such a hearing. We must therefore conclude that no such hearing was held. Accordingly, we need not decide whether the decedent's affidavit would have been admissible in the evidence of this case if its allegations had been tested in a court proceeding.

768 S.W.2d 51 (1989). Illustrative of our reasoning is *Barnett v. Commonwealth,* Ky., 763 S.W.2d 119 (1988), wherein we reversed a murder conviction on various grounds, including the erroneous admission of hearsay evidence given by the victim's son-in-law and former attorney. The Commonwealth had theorized that appellant engaged in a long course of adulterous behavior and that he carefully planned and carried out the murder of his wife to prevent her from getting any of the money and property accumulated during the marriage. The son-in-law was permitted to testify that shortly before the crime was committed, the victim had told him that she would leave her husband if he took another vacation without her, and the divorce attorney was permitted to testify that more than a year before the victim's death, she had consulted him about her domestic problems, principally whether the proceeds of certain certificates of deposit she held jointly with her husband could be traced. In rejecting this testimony, we relied on *Jarrell v. Commonwealth,* 240 Ky. 845, 43 S.W.2d 177 (1931), and held such statements inadmissible as a violation of the rule against the admission of hearsay testimony. We acknowledged the possibility that in a proper case such statements might be admissible for the non-hearsay purpose of showing motive providing the evidence revealed appellant's knowledge of the statements. We concluded, however, that appellant's lack of knowledge of the conversations his wife had with her son-in-law and attorney precluded any non-hearsay use of the victim's statements. In *Barnett,* the hearsay testimony boiled down to irrelevant, inflammatory and untested background information about appellant's extramarital affairs. The victim's affidavit in the case at bar is not dissimilar.

In view of our holding that the affidavit should have been excluded on hearsay grounds, we need not consider whether the passage of two and a half years and the total absence of specificity in the affidavit affected its admissibility.

■ Appellant next claims error in the trial court's admission of evidence about two prior acts of misconduct he is alleged to have committed with regard to the victim. Witness Daphne Pritchard was permitted to testify that approximately seven years before the victim's death appellant hit his wife with his fist and caused her nose and mouth to bleed. This witness was also permitted to testify that approximately four years prior to the victim's death, appellant grabbed the victim by her hair and dragged her down an alley.

Appellant relies upon the general rule that evidence of independent uncharged acts of criminal conduct is inadmissible. In support of this proposition, he cites *Russell v. Commonwealth,* Ky., 482 S.W.2d 584 (1972), *O'Bryan v. Commonwealth,* Ky., 634 S.W.2d 153 (1982), *Holland v. Commonwealth,* Ky., 703 S.W.2d 876 (1985), and other acknowledged authority. The Commonwealth contends that under our decisions in *O'Bryan* and *Jones v. Commonwealth,* 303 Ky. 666, 198 S.W.2d 969 (1947), the evidence was properly admitted. We have examined these decisions and find that the testimony given by Daphne Pritchard falls short of the requirements set forth in *O'Bryan.* Acts of physical violence, remote in time, prove little with regard to intent, motive, plan or scheme; have little relevance other than establishment of a general disposition to commit such acts; and the prejudice far outweighs any probative value in such evidence. Taken in the light most favorable to the Commonwealth, the testimony of Daphne Pritchard did no more than establish that on two occasions long before the date of the alleged murder, appellant physically abused his wife.

As to appellant's claim that the trial court erred in failing to disqualify the Assistant Commonwealth's Attorney, we need not comment other than to cite our recent decision in *Kentucky Bar Association v. Lovelace,* 778 S.W.2d 651 (1989). Observance of the principles set forth therein will prevent recurrence of error, if any, in regard to the question of inconsistent representation.

■ We have examined appellant's contention that the trial court erred in re-

fusing to permit him to voir dire the jury as to the prosecutor's possible conflict of interest and refusal to permit appellant to cross-examine the victim's mother as to her employment of the prosecutor's law firm to represent the victim's estate. We find no error in the trial court's rulings in this regard.

Finally, we have considered appellant's contention that the Commonwealth violated the trial court's discovery order. In view of our disposition of this case and the fact that the matters previously undisclosed are now known to appellant, it is unnecessary to decide whether the failure of disclosure was prejudicial error. In passing we observe, however, that our decision in *Barnett v. Commonwealth, supra,* makes the point that any distinction between a "malicious" or intentional violation of a discovery order and an inadvertent violation is not crucial. We quoted from *James v. Commonwealth,* Ky., 482 S.W.2d 92, 94 (1972), that the trial of a criminal case is not "a cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused." Upon retrial, we anticipate no difficulty with regard to this issue.

The judgment of the Clark Circuit Court is reversed and this cause remanded for retrial in conformity herewith.

STEPHENS, C.J., and COMBS, LEIBSON and VANCE, JJ., concur.

Gant, J., dissents.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because it was not reversible error for the trial judge to admit hearsay evidence relating to the conduct of Barnes and it was not error to introduce evidence of his prior uncharged misconduct.

Barnes was charged with the shotgun murder of his wife. His defense was that the shooting was accidental. There was a history of marital discord and violence.

Although I can agree with some of the comments made in the majority opinion regarding hearsay evidence, I believe the affidavit evidence presented here falls clearly within an exception to the prohibition against hearsay. The philosophical basis for permitting hearsay under any circumstances is that in its search for the truth, the trial court should be allowed to consider certain forms of hearsay if there is a showing of necessity, that is that the evidence cannot be presented in a nonhearsay form. In this case, the affiant had been killed. In addition, hearsay evidence should be received only when it possesses the characteristic of trustworthiness. Here I believe both of these elements are obvious.

It was not reversible error for the trial judge to admit hearsay evidence contained in an affidavit for a restraining order filed by the decedent two and a half years prior to her death. The affidavit had been filed by the victim in a dissolution of marriage action against Barnes and stated that he had on numerous occasions physically thrown her out of the house, hit her and threatened to shoot her. *Cf. Scruggs v. Commonwealth,* Ky., 566 S.W.2d 405 (1978) which held that the admission of prior threats depends to a large extent on the nature and circumstance of the case and rests in the discretion of the trial judge. This Court has held that the prosecution may admit into evidence criminal warrants which have a direct bearing on the appellant's state of mind at the time of a homicide. *See Matthews v. Commonwealth,* Ky., 709 S.W.2d 414 (1985). Here the admission of the affidavit in support of a restraining order was competent and not remote in time. The evidence was admissible to show feelings between the defendant and the victim as well as to show the motive of the accused. *Cf. Fleenor v. Commonwealth,* 255 Ky. 526, 75 S.W.2d 1 (1934) which allowed the admission of prior threats which were made two and a half years before. *Privitt v. Commonwealth,* 271 Ky. 665, 113 S.W.2d 49 (1938) permitted evidence about threats that had been made four years prior to the homicide.

It was not reversible error for the trial judge to permit the prosecution to introduce evidence of the defendant's prior uncharged misconduct. A witness testified about two instances in which she saw Barnes commit physical violence against the victim. The first event testified to by the witness occurred four years prior to the death and the second incident occurred seven years prior. *Jones v. Commonwealth*, Ky., 554 S.W.2d 363 (1977) held that all evidence which is pertinent to the issue and tends to prove the crime charged is admissible although it may also prove or tend to prove the commission of other crimes ... the fact that it may tend to prejudice the accused in the minds of the jurors is not a ground for its exclusion. *Id.* at 367.

Evidence of admission of crimes other than the one charged is admissible if, (1) it is offered to prove motive, intent, knowledge, identity, plan or scheme or absence of mistakes or accident; (2) such evidence is relevant to the issue other than proof of a general criminal disposition, and (3) the possibility of prejudice to the accused is outweighed by the probative worth and need for the evidence. *O'Bryan v. Commonwealth*, Ky., 634 S.W.2d 153 (1982).

In determining whether evidence of other acts is admissible, a balancing test must be used to determine whether the probative value of such evidence is outweighed by the potential for undue prejudice. *Wonn v. Commonwealth*, Ky.App., 606 S.W.2d 169 (1980); *Cf. Huddleston v. Commonwealth*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

The prior acts were similar to the instant offense because they were acts of violence directed at the same individual. The prior acts were also not too remote in time to be admissible. The evidence must be considered on a case by case basis. *Scruggs, supra; Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1985). Here the uncharged misconduct was confined to attacks by the defendant on the victim and they covered a period of time immediately prior to and after their 1981 marriage.

The trial judge did not commit reversible error in either instance and this Court

should not second guess either the admissibility of the affidavit nor the testimony of the witness about prior misconduct.

I would affirm the conviction in all respects.